UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SSI TECHNOLOGY, INC.,

           Plaintiff/Counter-Defendant,

                              Case No. 13-CV-12672

vs.

                              HON. GEORGE CARAM STEEH

COMPAERO INC.,

           Defendant/Counter-Plaintiff.

_____/

OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [DOC. 30] AND GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DOC. 31]

       This action arises from a contractual dispute between SSI Technology, Inc.

("SSI") and Compaero Inc. ("Compaero").  SSI alleges that Compaero breached the

parties' contract by failing to comply with the specifications and delivery schedules

specified in the purchase orders.  Compaero filed a counterclaim, alleging that SSI was

the first to breach the contract by failing to timely pay for shipments accepted.

Discovery has concluded and both parties filed motions for summary judgment which

were argued before the court on May 12, 2014.

FACTUAL BACKGROUND

       SSI was awarded a contract with the United States Department of Defense to

supply certain goods.  In order to fulfill the contract, SSI needed to procure parts from

vendors including Compaero.  SSI looked to Compaero to purchase fiberoptic cable

components for use in a government rated defense contract.  On March 14, 2012,

March 22, 2012 and May 18, 2012, SSI issued Purchase Orders 70934, 71003, and 71339, respectively.  Compaero accepted the Purchase Orders, which included part specifications, delivery schedules, and payment terms.  SSI contends that Compaero repeatedly failed to deliver parts on time, deliver the required quantities, and meet the specifications stated in the contract.

The payment terms under the original three purchase orders were "net 30 days", meaning that payment should be received 30 days after goods were received.  SSI fell behind on the 30 day terms almost immediately.  Compaero agreed to change the payment terms to "net 60 days".  Compaero contends that SSI was over 60 days past due on most payments during the course of the contract.  As a result, Compaero maintains it was unable to pay its own suppliers, and eventually was unable to perform its contract obligations with SSI.  SSI disputes that it was ever materially late in making payments.

On June 12, 2013, Compaero sent an email to SSI, putting them on net 45 payment terms and a $100,000 credit limit.  Compaero further stated that "All orders are now on hold."  On June 13, 2013, SSI sent an email to Compaero objecting to the unilateral change in payment terms and declaring that if the situation is not resolved, SSI will terminate the Purchase Orders for cause.  SSI claims it was within the 60 day terms, and as of June 11, 2013 it had an outstanding balance of only $683.46 that exceeded the payment terms.

SSI does not dispute that it owes Compaero $153,471.86 for goods received and accepted under the contract.  Following termination of the contract, SSI has had to purchase replacement parts at a higher cost, and pay its employees overtime to obtain

the replacement parts.  SSI alleges it has incurred damages of $276,127.39 in its efforts

to mitigate damages caused by Compaero.

STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary

judgment "forthwith if the pleadings, depositions, answers to interrogatories and

admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a

matter of law."  *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).  The

Supreme Court has affirmed the court's use of summary judgment as an integral part of

the fair and efficient administration of justice.  The procedure is not a disfavored

procedural shortcut.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox

v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is

"'whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law.'"

*Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir.

2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The

evidence and all reasonable inferences must be construed in the light most favorable to

the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of

*some* alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no *genuine*

issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)

-3-

(emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (*citing Anderson*, 477 U.S. at 252).

<u>ANALYSIS</u>

I. <u>First Breach</u>

In a Michigan Supreme Court case dating back to 1914, the court held that "'[h]e who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for a subsequent failure on his part to perform.'" *Jones v. Berkey*, 181 Mich. 472, 480 (1914) (citation omitted). In applying this doctrine, courts in Michigan give the words "substantial breach" close scrutiny. "Such scrutiny discloses that the *application of such a rule can be found only in cases where the breach has effected such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible,* such as the causing of a complete failure of consideration. . . or the prevention of further

-4-

performance by the other party . . . .  *McCarty v. Mercury Metalcraft Co.*, 372 Mich. 567, 574 (1964) (citations omitted).

A breach is considered to be substantial when it "undermines the very essence of the contract, or 'goes to the heart of the agreement.'" *Able Demolition v. Pontiac*, 275 Mich. App. 577, 586 (2007).  Where a contract to supply gasoline included a provision that seller would pay buyer a rebate of $0.015 per gallon of fuel purchased by seller, the court held that seller's failure to pay the rebate was not a substantial breach. Rather, the agreement's overriding purpose was for the buyer to have a guaranteed supply of fuel, which it could sell to its customers and make a profit.  The evidence showed that discontinuing the rebate did not make the buyer's performance under the contract impossible or ineffective.  *Atlas Oil Co. v. Nassar*, 2010 WL 3389743 (Mich. App. 2010) (unpublished).

A.  Alleged Breaches by Compaero

SSI alleges that Compaero first breached the contract in May 2012, when it failed to apply the required adhesive on certain parts.  As evidence, SSI points to an email from Compaero's Vice President of Sales and Marketing, Robert Small, to SSI dated May 8, 2012.  The email states Quote 341687 is not valid because Small did not quote all of the parts with adhesive, which is a $1.00 charge.  "I am reworking the quote with the quantities you need now."  On its face, the evidence does not unequivocally support SSI's allegation of a substantial breach by Compaero.  Indeed, the parties continued to work together under the contract for a year after this quote problem arose.

In June of 2012, SSI sought a Return for Materials Authorization to return 90 parts received from Compaero.  The Return Merchandise Authorization itself states that

the return was a result of SSI's incorrect drawing.  The same month, Compaero

acknowledged it was reworking a mold, not because of some fault on its part, but

because SSI provided Compaero with the wrong size tubing for the assembly.

In fact most, if not all, of SSI's evidence of breaches by Compaero has alternate

explanations that do not unequivocally support SSI's theory of first breach.  Whether

and when Compaero committed a substantial breach that rendered performance by SSI

ineffective or impossible, and therefore excused, remains an issue of fact for trial.

B.  Alleged Breach by SSI

On August 29, 2012, Robert Small sent an email to Robert Bloom, President of

SSI, stating that $42,568 was owed by SSI and was over 60 days past due.  On

October 2, 2012, Small sent another email to Bloom stating SSI owed $70,000 that was

over 60 days late.  On November 27, 2012, Small sent an email to Bloom attaching an

accounts receivable statement from Compaero showing that SSI owed Compaero

$280,307.36 of which $137,077.48 was over 60 days past due.

Compaero maintains that its relationship with its suppliers was adversely affected

because of SSI's failure to pay pursuant to the contract terms.  On January 3, 2013,

Small sent an email to Bloom stating that Compaero's supplier Hellerman put

Compaero on hold due to SSI's late payments.  Another supplier, Glenair, would not

send out shipments needed for the SSI project without payment.

SSI disputes that it was ever substantially late in making payments, though

Bloom acknowledged in an email dated March 27, 2013 that SSI's *average* days to pay

was 64.  In response to Small's email of June 12, 2013, putting SSI's orders on hold

pending working out payment issues, Chief Operating Officer of SSI, Gary Kippe,

responded that he thought the parties were working on these issues in good faith and that "the aging statements were conflicting because of the agreed to move outs".  As evidence that SSI was in compliance with its payment terms, SSI submits an email written on June 13, 2013 by Compaero's Robert Small to Matt Granger, the COO at Esstech Engineering, a vendor for Compaero, which states that SSI was "at 60 days and hold to that for the most part."  At his deposition, Small explained that he was on vacation when he wrote that email, and was referencing that SSI can have Net 60 payment terms, not that they were within Net 60 days on payments.  (Small dep, pp 129-131).

The court concludes there are issues of fact regarding breaches of SSI's payment obligations and whether any such breaches were substantial under the law.

II.  Notice of Breach

Where tender has been accepted, the buyer must, within a reasonable time after he discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy.  MCL 440.2607(3)(a); *American Bumper & Mfg. Co. v. Transtechnology Corp.*, 252 Mich. App. 340, 345 (2002).  The purpose of the UCC's notice requirements is (1) to prevent surprise and allow the seller the opportunity to make recommendations how to cure any nonconformance, (2) to allow the seller the fair opportunity to investigate and prepare for litigation; (3) to open the way for settlement of claims through negotiation, and (4) to protect the seller from stale claims and provide certainty in contractual arrangements.

Compaero maintains that prior to Robert Bloom's June 13, 2013 email terminating the contract, SSI did not give notice that it considered Compaero to be in

-7-

breach of contract.  At oral argument, SSI's counsel acknowledged that SSI did not give formal notice of breach before this time.  SSI continued to accept goods throughout the contract.  Only after Compaero informed SSI that it was holding shipments did SSI state it was terminating the contract.  The email strings provided as evidence in this case show constant communication between the parties where SSI informs Compaero of a problem, and Compaero explains how it is going about addressing the problem.

Some courts have held it is not enough where a buyer merely notifies a seller that there is a problem with a transaction, but does not notify the seller that they are in breach.  *Aqualon Co. v. MAC Equip., Inc.*, 149 F.3d 262, 268-69 (4th Cir. 1998); *K & M Joint Venture v. Smith Int'l, Inc.*, 669 F.2d 1106, 1113 (6th Cir. 1982) (applying Ohio law).  This district has adopted the notion that even if adequate notice is given at some point, subsequent actions by the buyer may negate its effect and the buyer's conduct, taken as a whole, must constitute timely notification that the transaction is claimed to involve a breach. *Contech Casing, LLC v. ZF Steering Systems, LLC*, 931 F.Supp.2d 809, 816 (E.D. Mich. 2013); see also*, American Bumper & Mfg.*, 252 Mich. App. at 348 (citing *Eastern Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 976 (5th Cir. 1976)).

The court finds there are issues of fact regarding the timing and adequacy of any notice of breach by SSI.

III.  Compaero's Counterclaim

SSI has not disputed that it owes Compaero $153,471.86 under the terms of the contract.  This is no longer an issue of fact in the case.  The court will await the conclusion of the case to enter judgment for Compaero on its counterclaim.

<u>CONCLUSION</u>

For the reasons stated in this opinion and order, plaintiff SSI's motion for summary judgment is DENIED, defendant Compaero's motion for summary judgment on SSI's complaint is DENIED, and the case will proceed to trial.  Compaero's motion for summary judgment on its counterclaim is granted, but judgment will await the conclusion of the trial on the remaining claims.

Dated:  May 15, 2014

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 15, 2014, by electronic and/or ordinary mail.

s/Barbara Radke
Deputy Clerk

---